**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| Han-Oh Chung, | ) |
| | ) |
|     and | ) |
| | ) |
| Dong-Wook Lee | ) |
| | ) |
|                Plaintiffs, | )    Civil Action No. 1:18-cv-642-CMH/MSN |
| | ) |
|     v. | ) |
| | ) |
| PSI International, Inc., | ) |
| 11200 Waples Mill Road, Suite 200 | ) |
| Fairfax, Virginia 20030 | ) |
| | ) |
|     and | ) |
| | ) |
| PSI Investment, LLC, | ) |
| 2907 Saintsbury Plaza, Unit 3-405 | ) |
| Fairfax, Virginia 22031 | ) |
| | ) |
|     and | ) |
| | ) |
| Richard K. Seol, | ) |
| 2907 Saintsbury Plaza, Unit 3-405 | ) |
| Fairfax, Virginia 22031, | ) |
| | ) |
|                Defendants. | ) |

**COMPLAINT**

Come now the Plaintiffs, Han-Oh Chung and Dong-Wook Lee ("Plaintiffs"), by counsel,

and for their Complaint against Defendants PSI International, Inc. ("PSI"), PSI Investment, LLC

("PSI Investment"), and Richard K. Seol (collectively, "Defendants") state the following:

1

## NATURE OF ACTION

1.      This is an action for declaratory and injunctive relief to confirm Mr. Chung's position and rights as the owner of 614,063 shares, or 5.12%, of PSI's common stock. Plaintiffs were induced to pay billions of Korean Won—the equivalent of millions of dollars—for these shares through false statements by Defendants that, among other things, PSI's common stock was being listed on KOSDAQ, a Korean Stock Exchange, and would be so listed by the end of 2015. Prior to and during the transactions, Defendants promised that Mr. Chung's shares would be recognized as effective and valid shares of PSI after the transactions. Defendants even issued and signed documents verifying the shares were effective and owned by Mr. Chung. PSI was never listed on KOSDAQ, but now that Defendants have started the process to list PSI's common stock on NASDAQ, they have repeatedly refused to recognize Mr. Chung's ownership of those shares. If Mr. Chung is not a shareholder of PSI, then Defendants defrauded him out of millions of dollars in violation of Virginia common law and the federal securities laws, and Plaintiffs are entitled to recover the millions of dollars of damages they suffered as a result of Defendants' fraud.

## THE PARTIES

2.      Mr. Chung is a successful businessman and private equity investor. He is a citizen of the Republic of Korea and resides in the city of Seoul. He has a long track record of making profitable investments in private companies.

3.      Mr. Lee also is a successful businessman and private equity investor. He is a citizen of the Republic of Korea and resides in the city of Seoul. Like Mr. Chung, Mr. Lee has a long track record of making profitable investments in private companies.

4.      PSI is a corporation incorporated under the laws of the Commonwealth of Virginia and has its principal place of business at 11200 Waples Mill Road, Suite 200, Fairfax, Virginia 20030. According to its website, PSI specializes in providing a blend of technology, health science, social, and energy management services, and its primary clients are government entities. PSI is currently attempting an Initial Public Offering ("IPO") on NASDAQ. PSI, on its own and through its subsidiary and agent, PSI International Asia Co., Ltd. ("PSI Asia"), solicited potential investors in Korea, including Plaintiffs, to make investments in PSI. The actions of PSI Asia and its personnel in soliciting investments from Plaintiffs were authorized by PSI.

5.      Richard K. Seol is the President and Chairman of PSI and resides at 2907 Saintsbury Plaza, Unit 3-405, Fairfax, Virginia 22031. Mr. Seol has been working for PSI to find funding sources since 2012 and has been holding himself out as the President of PSI since at least June 2015. Mr. Seol was involved in and aware of PSI's efforts to solicit investors in Korea.

6.      PSI Investment is a limited liability company organized under the laws of Virginia and has its principal place of business at 2907 Saintsbury Plaza, Unit 3-405, Fairfax, Virginia 22031. PSI Investment purports to be a shareholder of PSI. According to the Offering Statement that PSI filed with the SEC on September 12, 2017 (the "Offering Statement"), and the October 30, 2015 Stock Purchase Agreement that PSI attached as Exhibit 6.1 to the Offering Statement, PSI Investment purports to have acquired 100% of the outstanding shares of PSI common stock on October 30, 2015. The Stock Purchase Agreement was signed by Mr. Seol on behalf of PSI Investment, and as disclosed in the Offering Statement, PSI Investment is an entity of which Mr. Seol "has voting and dispositive control."

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because this action involves claims that arise under the laws of the United States and all other claims are part of the same case or controversy.

8.      The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). Messrs. Chung and Lee are citizens of a foreign state, Korea. PSI is a Virginia corporation with its principal place of business in Fairfax, Virginia, and, therefore, resides in this judicial district and division. Mr. Seol is an individual who resides and, upon information and belief, is domiciled in Virginia at 2907 Saintsbury Plaza, Unit 3-405, Fairfax, Virginia 22031. PSI Investment is a Virginia limited liability company with its principal place of business at 2907 Saintsbury Plaza, Unit 3-405, Fairfax, Virginia 22031. Upon information and belief, the only member of PSI Investment is Mr. Seol, who is a resident of Virginia. As a result, PSI Investment is a resident of Virginia. Thus, this is a case between citizens of a state and citizens of a foreign state. And the amount in controversy in this action exceeds $75,000. Both collectively and independently, the amount of damages suffered by Plaintiffs in connection with Defendants' wrongful acts, as well as the cost to Defendants to comply with the requested injunctive and declaratory relief, significantly exceed $75,000.

9.      This court has personal jurisdiction over the Defendants because they are subject to general jurisdiction in this Court. PSI is incorporated under the laws of Virginia and has its principal place of business in Fairfax, Virginia. PSI Investment is a Virginia limited liability company and has its principal place of business in Fairfax, Virginia. Mr. Seol also resides and has his domicile in this state in Fairfax, Virginia.

10.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and Local Rule 3(c). Section 1391(b)(1) provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." PSI, PSI Investment, and Mr. Seol are Virginia residents, and all three reside in the Eastern District of Virginia and the Alexandria Division. Therefore, venue is proper in this Court. *See* Local Rule 3(c).

## FACTUAL BACKGROUND

**Defendants Induce Plaintiffs' Investment in PSI.**

11.    As noted, Mr. Chung and Mr. Lee are successful Korean investors. Because they often successfully invest in companies as private equity investors, Mr. Chung and Mr. Lee are often sought out by private companies in need of investors.

12.    On or about April 18, 2015, a colleague of Mr. Lee, Mr. Moon-Jung Kang, informed Mr. Lee that PSI planned to list on KOSDAQ before the end of 2015. Mr. Kang also explained that PSI required funding before its IPO and listing on KOSDAQ. Mr. Kang is a broker and was working with a company, Keystone Global Ltd. ("Keystone Global"), that had frequently invested with Mr. Chung and Mr. Lee in the past. In his conversations with Mr. Lee, Mr. Kang was relaying information from PSI.

13.    Mr. Kang told Mr. Lee other things that made PSI sound like a good investment, including that PSI had already lined up KDB Daewoo Securities, a premier underwriting institution in Korea, to act as its underwriter and an investor. Mr. Kang also said that PSI's business was about to take off globally because its main business was "big data" and demand for those services were increasing.

14.     On or around April 30, 2015, Plaintiffs decided to pursue an investment in PSI common stock up to 2.5 billion Won. Among other things, they agreed to split the potential costs and profits, but agreed that that, for simplicity, any shares of PSI common stock they acquired would be held in Mr. Chung's name.

15.     However, when they met with the CEO of PSI Asia, Mr. Ki-Hoon Cheon, on or around April 30, 2015 to purchase PSI common stock, Mr. Cheon confirmed that PSI needed money but told them PSI did not currently have shares to issue because all of its issued shares had already been sold. Thus, an investment in PSI could not be a simple money-for-shares transaction. Instead, Mr. Cheon and PSI wanted Plaintiffs to buy certain assets from partners and/or affiliates of PSI, which Plaintiffs would hold as collateral and later be able to exchange for PSI common stock. These partners and affiliates include SSJ Investment Co. Ltd. ("SSJ Investment") and Purple Ocean Investment Fund No. 1 ("Purple Ocean"). At this meeting, Mr. Cheon gave Mr. Lee a business card bearing the PSI logo and identifying Mr. Cheon as the CEO of PSI Asia. Based on this and his statements at the meeting, Plaintiffs understood Mr. Cheon to be representing, and an agent of, PSI.

16.     The transactions leading to Plaintiffs' acquisition of PSI common stock are described in paragraphs 17-34 below. For convenience, a timeline summarizing key events is contained in paragraph 35 below.

17.     To accommodate PSI, Plaintiffs agreed to structure the transaction as requested. Specifically, on or around April 30, 2015, Plaintiffs agreed to buy from SSJ Investment and Purple Ocean a convertible bond issued by New Pride Corporation for 2 billion Won; Plaintiffs paid 260 million Won to SSJ Investment on April 30, 2015 and paid 1.74 billion Won to Purple Ocean on April 30, 2015. Based on current exchange rates, this 2 billion Won is approximately

equal to $1.85 million. As security for the convertible bond, Plaintiffs received from Purple Ocean and SSJ Investment 13,547 shares of PSI common stock, which served as collateral and would be transferred with the bond when Plaintiffs were able to exchange the bond for shares of PSI common stock.

18.     While not a direct purchase from PSI, the transaction was structured to ensure that PSI and/or PSI Investment were the beneficiaries of Plaintiffs' investment. Mr. Cheon, who was at the time the CEO of PSI Asia, served as the representative of Purple Ocean and signed the bond transfer agreement on behalf of Purple Ocean. In addition, Jung-Ho Seo, who was a director of PSI Asia and later was introduced to Mr. Lee as the CEO of PSI Asia, served as the representative of SSJ Investment and signed the contract on behalf of SSJ Investment. Moreover, the money that SSJ Investment and Purple Ocean used to buy the convertible bond originally came from PSI Investment and, upon information and belief, PSI Investment was repaid with Plaintiffs' investment of 2 billion Won. Thus, PSI and/or its purported shareholders, including Mr. Seol, benefitted substantially from Plaintiffs' purchase of this bond.

19.     On April 30, 2015, when they acquired the convertible bond, it was Plaintiffs' intent to acquire shares of PSI common stock, and they planned to exchange the convertible bond for shares of PSI common stock. At their meeting on that day, Mr. Lee told Mr. Cheon that Plaintiffs wanted to exchange the convertible bond for shares of PSI when shares were available. In fact, at that same meeting, Mr. Chung entered into an agreement with Keystone Global, in which Keystone Global agreed to find within 45 days a counter-party that would accept Plaintiffs' convertible bond and collateral shares in exchange for 20,321 shares (6%) of PSI's common stock. Keystone Global had on or around March 6, 2015 purchased 26,249 shares (7.75%) of PSI common stock from PSI Investment (who purported to own the shares) for 3.875

billion Won; this March 6, 2015 agreement was signed by Mr. Seol on behalf of PSI and PSI Investment.

20.     As a result of direct conversations Plaintiffs had with Mr. Cheon on April 30, 2015, Mr. Cheon understood that Plaintiffs were buying the convertible bond so that they could later exchange it for PSI common stock. Mr. Cheon never made any statement to Plaintiffs that PSI would refuse to recognize their ownership of common stock after such an exchange. To the contrary, Mr. Cheon told Plaintiffs at the meeting they should buy the convertible bond and exchange it for shares of PSI.

21.     Beginning at that April 30, 2015 meeting, Mr. Cheon also made numerous other statements to Mr. Lee intended to induce Plaintiffs to invest in PSI, including making an exchange of their convertible bond for shares of PSI common stock. Among other things, Mr. Cheon confirmed that PSI was looking for pre-IPO funding, and Mr. Cheon told Mr. Lee that PSI stock would appreciate tenfold after the IPO because PSI's main business was the "big data" industry and that business was about to take off globally because of increased demand for the work.

22.     Mr. Cheon also told and confirmed to Plaintiffs other things they heard from Mr. Kang, including that PSI would be listed on KOSDAQ by the end of the 2015 calendar year. In fact, Mr. Cheon told Mr. Lee that it was 100% certain that PSI would be listed on KOSDAQ by the end of 2015. As evidence that PSI was going to be listed on the KOSDAQ by the end of 2015, Mr. Cheon told Mr. Lee that KDB Daewoo was making a significant investment in PSI and would be PSI's underwriter. Mr. Cheon further told Mr. Lee that KDB Daewoo prepared a presentation for PSI and that Mr. Lee should get the presentation from Mr. Kang. Mr. Kang provided the presentation to Mr. Lee, which showed a schedule for listing on KOSDAQ by

August 2015. Upon information and belief, KDB Daewoo Securities had neither invested in PSI nor agreed to act as underwriter for PSI at the time that Mr. Cheon made those statements, and Mr. Cheon knew these statements were false. PSI and Mr. Cheon also knew at the time of these statements that PSI would not be able to list on KOSDAQ in 2015 because it lacked an underwriter and had not made enough, if any, progress towards meeting the listing requirements.

23.     Then, on or around May 28, 2015, Mr. Chung contracted with CYN Holdings, which agreed to acquire from Keystone Global and sell to Mr. Chung, on behalf of Plaintiffs, 5,928 shares (1.75%) of PSI's common stock in exchange for a cash payment of 500 million Won. Plaintiffs had paid 200 million Won to CYN Holdings on May 20, 2015 and paid 300 million Won to CYN Holdings on May 28, 2015, bringing Plaintiffs' investment in PSI's common stock to 2.5 billion Won—approximately $2.3 million.

24.     In early June 2015, Plaintiffs began discussing with Mr. Hang Muk Shin the possibility of exchanging their convertible bond for shares of PSI common stock. Mr. Shin had previously obtained 20,321 shares (6%) of PSI's common stock on May 28, 2015. Mr. Shin obtained those shares in exchange for, with his partner, Mr. Sangil Seo, making a loan of 3 billion Won to PSI Asia. Mr. Shin agreed to transfer 16,935 shares (5%) of PSI's common stock to Plaintiffs in exchange for Plaintiffs' convertible bond and collateral shares. Plaintiffs in turn would agree that this transaction satisfied the obligation of Keystone Global to present Plaintiffs with the opportunity to obtain 20,321 shares (6%) of PSI's common stock, as well as the obligation of CYN Holdings to buy and transfer 5,928 (1.75%) shares of PSI's common stock from Keystone Global to Plaintiffs. As explained below, this agreement between Mr. Shin and Plaintiffs was conditional on PSI registering in Mr. Chung's name the shares of PSI common stock being transferred to him.

25.     Mr. Lee and Mr. Shin notified Mr. Cheon at PSI Asia, as agent for PSI, about their agreement. Plaintiffs understood that Mr. Shin had not received a certificate for his shares from PSI with his name on them, and Plaintiffs wanted assurances that PSI would honor the transfer and recognize Mr. Chung as the new record owner of the common stock Mr. Shin was transferring to Mr. Chung. Accordingly, Mr. Lee demanded that PSI issue the transferred shares to Mr. Chung with his name on them to prove his ownership. Mr. Cheon confirmed that PSI would issue the shares in Mr. Chung's name and would recognize him as a shareholder following the transfer.

26.     Mr. Shin and Mr. Lee instructed Mr. Cheon, as agent for PSI, to register the transfer of 16,935 shares from Mr. Shin to Mr. Chung.

27.     On or around June 18, 2015, Mr. Seol executed two documents confirming that Mr. Chung owned 3,398 shares (1%) and 13,548 shares (4%) of PSI common stock, respectively, for a total of 16,935 shares or 5% of the total then-issued shares of PSI common stock. Each verification was created by PSI in English and Korean, and each verification contains the PSI logo, slogan, and corporate seal. The verifications also are signed by Mr. Seol as the President of PSI Investment and as the President of PSI. The verifications were signed and sealed by Mr. Seol in Virginia. They were sent to Korea by mail. The verifications are attached hereto as Exhibit A; the redacted information in Exhibit A is Mr. Chung's Korean resident registration number.

28.     Plaintiffs understood these verifications to be evidence of Mr. Chung's present ownership of PSI common stock and PSI's and PSI Investment's recognition of his ownership. Indeed, on or around June 16, 2015, Mr. Cheon sent Mr. Lee the following statement by text, confirming PSI's knowledge and acceptance of the share transfer: "This is the DHL tracking number for registered certificate under Hano [Ch]ung's name sent by the US headquarters. It is

expected to arrive in Korea within this week, and I will let you know the arrival time by tomorrow. I sent the same response to Shin Esq. because he has expecting [sic] it for a while[.] It was sent at 2 pm on Monday, Washington time."[1] From this communication, Plaintiffs understood that PSI recognized Mr. Chung as a shareholder and would instruct its transfer agent to register the transfer of shares, consistent with the instruction provided to PSI by Mr. Shin and Mr. Lee.

29.    Later that same day, Mr. Cheon again texted Mr. Lee and confirmed Mr. Chung's ownership of the PSI common stock and that the verification being issued would evidence PSI's registration of that ownership: "certificate registered under Hano [Ch]ung's name will be delivered by 6 pm, Thursday. . . . Please note that I will deliver it to [your lawyer] on Thursday evening." Again, Plaintiffs understood that PSI recognized Mr. Chung as a shareholder and registered the transfer of shares.

30.    Then, on June 18, 2015, Mr. Cheon texted Mr. Lee to inform Mr. Lee that he "delivered the registration completed certificates to [Mr. Lee's lawyer]." Plaintiffs again understood this to be confirmation that PSI had completed registration of the shares in Mr. Chung's name.

31.    After receipt of the stock verifications and all of the promises by Mr. Cheon to recognize and register Mr. Chung as a shareholder of PSI, Plaintiffs finalized the transfer their of convertible bond and collateral shares to Mr. Shin in exchange for 16,935 shares (5%) of PSI's then-issued common stock.

32.    Later, on July 30, 2015, PSI Asia Director Jung-Ho Seo (who also served as representative of SSJ Investment when Plaintiffs purchased their convertible bond) gave Mr. Lee

---

[1]    Mr. Chung's name can be translated into the English alphabet as either "Chung" or "Jung." References to "Hano Jung" in translations are references to Mr. Chung.

a "Confirmation Letter" providing further assurances to Plaintiffs. The letter confirmed that the stock verifications previously issued to Mr. Chung for 5% of PSI's common stock "are effective" and that "there shall be no objection in this regard." A copy of this letter is attached hereto as Exhibit B.

33. The stock verifications and the statements by Mr. Cheon and Mr. Seo on behalf of PSI were material to Plaintiffs' decision to transfer their convertible bond and collateral shares to Mr. Shin, and also to forego enforcing contractual rights they had against Keystone Global and CYN Holdings in the event either failed to provide shares of PSI common stock for Mr. Chung. Plaintiffs would not have agreed to transfer their convertible bond and collateral shares, or agreed to accept 16,395 shares (5%) in satisfaction of Keystone Global's and CYN Holding's aggregate obligation to obtain for Plaintiffs 7.75% of PSI's common stock, if they had not received the stock verifications and Mr. Cheon and Mr. Seo had not promised that PSI would recognize him, and in fact had recognized him, as a shareholder of PSI.

34. In addition, on December 29, 2015, PSI and PSI Asia separately agreed in writing to Mr. Shin that they would "not bring any objection, including any claim of invalidity, with respect to the 20,322 shares (6% of the total issued and outstanding shares) of common stock" he acquired on May 28, 2015, in exchange for his loan to PSI Asia. Of those 20,322 common shares issued to Mr. Shin, which PSI and PSI Asia confirmed they would not dispute, 16,935 shares were transferred to Mr. Chung, with contemporaneous approval by PSI. Mr. Seol signed this document on behalf of PSI, and Mr. Seo signed on behalf of PSI Asia. Upon information and belief, Mr. Seol signed in Virginia.

35. Below is a timeline summarizing the transactions described in paragraphs 17-34.



36.     Throughout Plaintiffs' interaction with PSI and PSI Asia, PSI Asia and its personnel acted as agents for PSI. At all times, Plaintiffs understood Messrs. Cheon and Seo, and PSI Asia generally, to be representing PSI and to be authorized agents of PSI. For example, in sending the July 30, 2015 letter, Mr. Seo and PSI Asia acted as an agent of PSI by confirming that the verifications issued to Mr. Chung by PSI were "effective," a representation only PSI itself could truly make. Similarly, in his text messages and other statements to Mr. Lee, Mr. Cheon repeatedly promised that PSI would recognize the transfer of shares and register that

transfer. Mr. Cheon also promised that PSI would issue certificates verifying Mr. Chung's ownership, which only PSI could do. And Defendants later issued those verifications, confirming Mr. Cheon was an authorized agent of PSI.

37.     PSI Asia even solicited additional investments from Messrs. Chung and Lee after issuing the stock verifications. On August 2, 2015, Mr. Cheon, acting again as agent of PSI, contacted Mr. Lee and offered Plaintiffs the opportunity to make another substantial investment in PSI. Specifically, Mr. Cheon offered Plaintiffs the ability to purchase PSI common stock at a discounted valuation if they agreed to invest an additional 300 million Won. Having already invested 2.5 billion Won to acquire 5% of PSI, Plaintiffs declined this offer.

**PSI Improperly Refuses to Recognize Mr. Chung as a Shareholder.**

38.     Despite its failure to list on KOSDAQ as promised in 2015, PSI is attempting to go public again, this time on NASDAQ. And now that it might actually be listed on a stock exchange, it has made clear to Plaintiffs that it will not recognize Mr. Chung as a shareholder in spite of its repeated representations to the contrary. At the offering price of $15.00 per share that PSI seeks for its shares, Mr. Chung's shares are worth $9,210,945.

39.     On September 12, 2017, PSI filed its Offering Statement with the Securities and Exchange Commission as its first step to list on NASDAQ. Incredibly, the Offering Statement says that PSI has no shareholders holding more than 5 percent of the common stock other than Mr. Seol through PSI Investment. This is a false statement: Mr. Chung owns 5.12% of PSI's common shares.

40.     As explained above, Mr. Chung obtained 16,935 shares of PSI's common stock from Mr. Shin in June 2015, which is evidenced by the verifications signed by PSI's President and Chairman, Mr. Seol. According to the Offering Statement, the PSI board voted on November

3, 2015, to split the then-outstanding 330,948 shares of PSI common stock into 12 million shares, which is a greater than 1:36 forward stock split. As a result of this split, Mr. Chung's shares became 614,063 shares of PSI common stock, which is 5.12% of the 12 million outstanding shares of PSI common stock.

41.     PSI subsequently amended its Offering Statement, but never corrected these misstatements. At all times thereafter, PSI has represented to NASDAQ, the SEC, and the public that no shareholder but PSI Investment holds more than 5 percent of PSI.

42.     The Offering Statement also contains a statement that is flatly in conflict with representations made by PSI and Mr. Seol in June 2015. Specifically, the Offering Statement states that PSI Investment acquired 100% of the shares of PSI on October 30, 2015. The Offering Statement attaches as Exhibit 6.1 a purported "Stock Purchase Agreement" in which PSI Investment acquires 100% of the shares of PSI from various individuals in PSI's management. Mr. Chung is not a party to this agreement and received no compensation under that agreement. To the contrary, in the verifications signed by Mr. Seol in June 2015—four months before this purported Stock Purchase Agreement—PSI and PSI Investment represented to Plaintiffs that PSI Investment owned and/or held and could transfer the shares being acquired by Mr. Chung. Either this representation or the statement in the Offering Statement must be false. Plaintiffs certainly would not have traded their convertible bond and collateral shares to Mr. Shin if PSI, PSI Investment, or Mr. Seol had disclosed that they did not own or hold the shares or have the ability to transfer or register a transfer of those shares.

43.     Simply put, either Mr. Chung is a shareholder in PSI, as PSI represented to him on multiple occasions, or PSI and its agents defrauded Plaintiffs, inducing them to invest

substantial sums in reliance on promises of shares of PSI common stock, only to now refuse to recognize those shares as the company prepares to list on NASDAQ.

44.     Seeking clarity on PSI's position, Mr. Chung sent a letter to Mr. Seol as the representative of PSI and PSI Investment on May 10, 2018. Mr. Chung reminded Mr. Seol that he was the owner of 5.12% of PSI's common stock and demanded that, among other things, PSI (i) amend its filings with the SEC to identify Mr. Chung as an owner of more than 5% of PSI common stock; (ii) issue to Mr. Chung share certificates to memorialize his 614,063 shares of PSI common stock; (iii) accurately identify Mr. Chung as a shareholder on PSI's stock register; and (iv) allow Mr. Chung to inspect PSI's books and records, including among other things its stock register, articles of incorporation and bylaws, and records of board and shareholder action, as is Mr. Chung's right as a shareholder under Virginia Stock Corporation Act. A copy of this letter is attached hereto as Exhibit C.

45.     Mr. Seol subsequently responded on behalf of PSI, denying that Mr. Chung is a shareholder of PSI and disclaiming knowledge of PSI Asia's actions to solicit investors in Korea. Mr. Seol's incredible denial is undermined by, among other things, the written documents that he himself signed verifying PSI Asia's actions and representations. For example, on June 18, 2015, Mr. Seol signed on behalf of PSI and PSI Investment the verifications that Mr. Chung was registered as the owner of 5% of PSI's common stock. He also signed in December 2015 the assurance by PSI and PSI Asia that neither would seek to challenge the shares issued to Mr. Shin—which are the same shares that Mr. Chung acquired.

46.     Plaintiffs also have learned that, like the false statements Defendants made to Plaintiffs to induce investment in PSI, PSI apparently has continued making false statements in its efforts to market an IPO in Korea. For example, on its website, available at

http://www.psiint.com/ipo/, PSI claims that it had annual revenues of $89 million in 2017 and more than $300 million in revenues over the last three years. A translation of these statements is attached as Exhibit D hereto. But PSI's Offering Statement and subsequently filed Form 10-Q disclose that PSI had revenues of only $100 million in 2015 and 2016 combined, and revenues of only $33 million for the first nine months of 2017. Upon information and belief, PSI did not have anywhere near $89 million in revenues in 2017 or $300 million in combined revenues for 2015-2017: it had revenues of only $133 million through the first 33 months of that 36 month period.

47.     Plaintiffs have been left with no choice but to seek relief from this Court to declare that Mr. Chung is a shareholder of PSI or, in the alternative, to recover damages for the common law and securities fraud perpetrated by Defendants.

## COUNT I – DECLARATORY JUDGMENT
### (against all Defendants)

48.     Plaintiffs incorporate by reference paragraphs 1-47 herein as if set forth in their entirety.

49.     Under 28 U.S.C. § 2201, a case of actual controversy exists concerning whether Mr. Chung is a shareholder of PSI and owns 614,063 shares of PSI common stock.

50.     Mr. Chung asserts that he is a shareholder of PSI and is entitled to all the rights and privileges of a shareholder that owns more than 5% of PSI, having among other things spent billions of Korean Won to obtain his PSI common stock, received assurances by PSI and its agents that he would be and was a shareholder, received verifications from PSI that he was the registered owner of 16,935 (pre-split) shares of PSI common stock, and made an appropriate instruction with Mr. Shin to register transfer of the shares.

51.     Defendants wrongfully deny that Mr. Chung is a PSI shareholder.

52.     Thus, this case involves an actual and substantial controversy regarding the rights and other legal relations between the parties, and the requested judicial declaration is necessary to guide the parties' future conduct, specifically whether PSI must afford Mr. Chung the rights and privileges of a PSI shareholder.

53.     The value of the dispute is at least $9,210,945.00, which is the value of Mr. Chung's 614,063 shares at the offering price of $15.00 per share that PSI is using in its planned IPO.

54.     For these reasons, this issue is appropriate for a declaratory judgment, and the Court should issue a declaration that Mr. Chung is the owner of 614,063 shares of PSI's common stock.

<u>**COUNT II – BREACH OF DUTY TO REGISTER TRANSFER OF SHARES UNDER VIRGINIA CODE SECTION 8.8A-401**</u>
**(against Defendant PSI)**

55.     Plaintiffs incorporate by reference paragraphs 1-54 herein as if set forth in their entirety.

56.     PSI is an issuer of securities as defined in Virginia Code § 8.8A-201.

57.     Mr. Chung acquired 16,935 (pre-split) shares of PSI common stock from Mr. Shin, who previously acquired those shares from PSI and its agent, PSI Asia. As a result of that transaction, Mr. Lee and Mr. Shin instructed PSI to register the transfer of those shares to Mr. Chung.

58.     Shares of PSI's common stock are "securities" under title 8.8A of the Virginia Code, and Virginia Code Section 8.8A-401(a) requires that issuers of securities, like PSI, must register the transfer of un-certificated securities if instructed to do so and certain requirements in Section 8.8A-401(a) are satisfied.

59.     The requirements of Section 8.8A-401(a) were satisfied when Messrs. Shin and Lee instructed Mr. Cheon, PSI's agent, to register the transfer. In particular, it is clear that Mr. Shin was authorized to request that transfer. Indeed, PSI acknowledged that the instruction was authorized when it issued the verifications of ownership to Mr. Chung on June 18, 2015, confirming that he was the owner of 16,935 (pre-split) shares of PSI common stock. Yet based on PSI's recent conduct in denying that Mr. Chung is a shareholder, PSI apparently failed to actually register that transfer, breaching its duty to register the transfer of shares to Mr. Chung.

60.     Plaintiffs have no adequate remedy at law for the failure to register him as a shareholder.

61.     Thus, the Court should order PSI to register Mr. Chung as a shareholder on its stock register as the owner of 614,063 shares of PSI common stock.

### COUNT III – COMMON LAW FRAUD
**(against all Defendants)**

62.     Plaintiffs incorporate by reference paragraphs 1-61 herein as if set forth in their entirety.

63.     Defendants and their agents made the following false statements or omissions of fact to Plaintiffs, among others:

a.     On multiple occasions on and/or after April 30, 2015, Mr. Cheon told Mr. Lee that PSI would 100% be listed on KOSDAQ in 2015;

b.     On multiple occasions on and/or after April 30, 2015, Mr. Cheon further represented to Mr. Lee that KDB Daewoo had invested and agreed to act as underwriter for PSI's IPO on KOSDAQ;

c.     On and after April 30, 2015, upon learning that Plaintiffs were acquiring the convertible bond with the intent to later transfer it for shares of PSI common stock, and in

fact suggesting that Plaintiffs do so, Mr. Cheon never disclosed to Plaintiffs PSI's intent to, or even a possibility that it would, refuse to recognize Mr. Chung's ownership of PSI common stock after the transfer;

        d.     On multiple occasions in or around June 2015, Mr. Cheon informed Mr. Lee that PSI would recognize Mr. Chung as a shareholder of PSI common stock after he exchanged his convertible bond for shares;

        e.     On June 16 and on June 18, 2015, Mr. Cheon told Mr. Lee in writing, via text message, that the verifications PSI and PSI Investment were sending were evidence that Mr. Chung owned PSI common stock and was registered as a shareholder;

        f.     On or around June 18, 2015, Defendants, through Mr. Seol and from Virginia, represented to Plaintiffs in writing in the stock verifications that PSI Investment held and/or owned and the shares, that PSI Investment had the ability to transfer the shares to Mr. Chung, and that PSI and PSI Investment were, in fact, recognizing the transfer to Mr. Chung; and

        g.     On July 30, 2015, Mr. Seo told Mr. Lee in writing, via letter, that Mr. Chung's shares were "effective" and that PSI would not dispute Mr. Chung's ownership of the shares.

64.     Each of these false representations or omissions was material to Plaintiffs' decisions to invest in PSI common stock, to transfer the convertible bond to Mr. Shin in exchange for PSI common stock, and to forego contractual remedies against Keystone Global and CYN Holdings. Without these false representations and omissions, they would not have invested 2.5 billion Won for PSI common stock.

65.     Defendants intentionally and knowingly made these false statements and omissions, and they knew they were false at the time they were made. Defendants made these false statements and omissions with the intent to defraud Plaintiffs.

66.     PSI did not list on KOSDAQ in 2015, and PSI, through Mr. Cheon, knew that it would not be listed in 2015 at the time it solicited Plaintiffs' investment and said it would be listed on KOSDAQ by the end of 2015, as PSI had not taken the steps needed to be listed within that timeframe.

67.     Similarly, PSI, through Mr. Cheon, knew that KDB Daewoo had not invested or agreed to be the underwriter for the IPO at the time he told Plaintiffs that KDB Daewoo had done both.

68.     PSI also has now disclosed in its Offering Statement that PSI Investment did not purport to acquire the shares it supposedly transferred to Mr. Chung until months after it effectuated the transfer. Mr. Seol, President and Chairman of PSI and President of PSI Investment, signed both the verification stating that PSI Investment owned and/or held and could transfer the shares in June 2015, as well as the Stock Purchase Agreement and Offering Statement disclosing that PSI Investment did not acquire those shares until October 2015. These statements are in direct conflict and one has to be false.

69.     Contrary to Messrs. Seol's, Cheon's, and Seo's repeated statements in May, June, and July 2015, they knew that PSI never intended to recognize Mr. Chung as a shareholder, or the verifications of ownership PSI and PSI Investment issued, after Plaintiffs purchased and exchanged the convertible bond for shares. Nor did any of these agents disclose PSI's intent to Plaintiffs. In the time since Plaintiffs purchased the convertible bond and exchanged it based on PSI's representations that Mr. Chung would be a shareholder of PSI, nothing has changed that

could alter his status as a shareholder. Put differently, there is no valid reason Defendants could have believed in May, June, and July 2015 that Mr. Chung would be recognized as a shareholder but now believe he should not be recognized as a shareholder. Thus, the fact that PSI refuses to recognize Mr. Chung as a shareholder now in its Offering Statement and in response to Mr. Chung's letter is clear evidence that PSI and its agents never intended to recognize him as a shareholder, and Defendants' statements that they would recognize him, or were recognizing him, were false. Likewise, their failure to disclose their intent not to recognize him as a shareholder is a material omission.

70.     These false statements and omissions were made with the intent to mislead Plaintiffs and induce them to send money to PSI's partners and others for the benefit of PSI and to waive contractual remedies, in exchange for shares of PSI common stock that PSI never intended to recognize.

71.     Plaintiffs unquestionably relied upon these false statements. Without these false statements or omissions of material fact, they would not have invested in PSI, traded the convertible bond for Mr. Shin's shares in PSI, or foregone contractual remedies.

72.     Because of this reliance on the false statements and omissions by Defendants, Mr. Chung has been damaged in an amount equal to the value of his rightful interest in PSI. Because he is entitled to 614,063 shares and PSI itself values each share at $15.00 as part of its planned IPO, Mr. Chung has suffered $9,210,945.00 in damages from Defendants' fraudulent conduct.

### COUNT IV – SECURITIES FRAUD UNDER OF SECTION 10(b) AND RULE 10b-5
**(against all Defendants)**

73.     Plaintiffs incorporate by reference paragraphs 1-72 herein as if set forth in their entirety.

74.     Defendants made the following material misrepresentations or omissions to Plaintiffs, among others.

a.      On multiple occasions on and/or after April 30, 2015, Mr. Cheon told Mr. Lee that PSI would 100% be listed on KOSDAQ in 2015;

b.      On multiple occasions on and/or after April 30, 2015, Mr. Cheon further represented to Mr. Lee that KDB Daewoo had invested and agreed to act as underwriter for PSI's IPO on KOSDAQ;

c.      On and after April 30, 2015, upon learning that Plaintiffs were acquiring the convertible bond with the intent to later transfer it for shares of PSI common stock, and in fact suggesting that Plaintiffs do so, Mr. Cheon never disclosed to Plaintiffs PSI's intent to, or even a possibility that it would, refuse to recognize Mr. Chung's ownership of PSI common stock after the transfer;

d.      On multiple occasions in or around June 2015, Mr. Cheon informed Mr. Lee that PSI would recognize Mr. Chung as a shareholder of PSI common stock after he exchanged his convertible bond for shares;

e.      On June 16 and June 18, 2015, Mr. Cheon told Mr. Lee in writing, via text message, that the verifications PSI and PSI Investment were sending were evidence that Mr. Chung owned PSI common stock and was registered as a shareholder;

f.      On or around June 18, 2015, Defendants, through Mr. Seol and from Virginia, represented to Plaintiffs in writing in the stock verifications that PSI Investment held and/or owned the shares, that PSI Investment had the ability to transfer the shares to Mr. Chung, and that PSI and PSI Investment, in fact, recognized the transfer to Mr. Chung;

g.      On July 30, 2015, Mr. Seo told Mr. Lee in writing, via letter, that Mr. Chung's shares were "effective" and that PSI would not dispute Mr. Chung's ownership of the shares.

75.      Each of these statements or omissions was false for the reasons explained above in paragraphs 65-69.

76.      Each of these false statements or omissions was made in connection with Plaintiffs' purchase of securities, namely PSI common stock. Mr. Lee made clear to Mr. Cheon and the other authorized agents of PSI that Plaintiffs wanted to purchase PSI common stock in exchange for their investment, and the false statements and omissions were made in response to Plaintiffs' efforts to acquire PSI common stock and to induce them to spend money or other consideration to acquire PSI's common stock.

77.      Defendant PSI made each of the foregoing material misrepresentations or omissions with the intent to deceive, manipulate, and defraud Plaintiffs and, therefore, had the requisite scienter to commit securities fraud. As explained above, the agent of PSI making each false statement or omission knew at the time it was made that it was false. The knowledge on the part of the agent making the false statement or omission is imputable to PSI. Moreover, PSI's President and Chairman, Mr. Seol was directly involved in Messrs. Cheon's and Seo's efforts, and PSI Asia's efforts generally, in soliciting investors in Korea and Plaintiffs in particular. This is demonstrated by his signing the stock verifications issued to Plaintiffs (which themselves contained false statements) as well as multiple other agreements on behalf of PSI and PSI Investment in connection with Plaintiffs and other Korean investors. Upon information and belief, Mr. Seol was aware that the statements being made by Messrs. Cheon and Seo were false,

and as the President and Chairman of PSI, his knowledge is independently imputable to PSI and establishes PSI's scienter.

78.     As noted, Mr. Seol himself made false statements to Plaintiffs in the stock verifications. It was Mr. Seol who later signed the Stock Purchase Agreement and Offering Statement, and the Offering Statement's disclosure that PSI Investment did not acquire shares of PSI until October 2015 is in direct conflict with his statements in the June 2015 stock verifications that PSI Investment held or owned and could transfer 16,935 shares to Mr. Chung. If the Offering Statement is accurate, it is clear that at the time he signed the stock verifications, Mr. Seol knew PSI Investment had not acquired and did not hold or own shares of PSI. Thus, Mr. Seol acted with scienter in making those false statements.

79.     PSI Investment falsely stated in the stock verifications that it held and/or owned and could transfer 16,935 (pre-split) shares of PSI common stock to Mr. Chung and was recognizing him as a shareholder of those shares. Mr. Seol signed the stock verifications on behalf of PSI Investment, and as explained above, Mr. Seol knew these statements were false at the time they were made. As the President of PSI Investment, and someone with "voting and dispositive control" over PSI Investment, his scienter is imputable to PSI Investment. Thus, PSI Investment had scienter to commit securities fraud.

80.     The misrepresentations and omissions of Defendants are material. If not for each of the false statements or omissions above, Plaintiffs would not have invested in PSI, exchanged the convertible bond for shares of PSI common stock that PSI promised to recognize, and foregone contractual remedies. Indeed, no reasonable investor would spend anything, much less money and assets worth 2.5 billion Won, if they knew they would receive *nothing* in return.

81.     Accordingly, Plaintiffs relied upon Defendants' false statements or omissions when they invested in PSI common stock, exchanged the convertible bond for shares, and decided to forego contractual remedies. Without those false statements or omissions, Plaintiffs would not have invested in PSI or exchanged the convertible bond.

82.     A substantial portion of Defendants' fraudulent conduct occurred in the United States, and thus, the fraud has a nexus with the United States. Among other things, Mr. Seol signed the stock verifications on behalf of PSI and PSI Investment in the United States. PSI and PSI Investment purported to recognize the transfer of shares to Mr. Chung in those verifications, and the verifications are the culmination of PSI's promises and performance under the transaction with Plaintiffs. Those stock verifications also contain a false statement regarding PSI Investment's ownership and ability to transfer shares to Mr. Chung. Thus, PSI purported to perform its promises to Plaintiffs, *i.e.*, recognize and register the transfer of stock to Mr. Chung, in the United States, and Defendants also made at least one of the false statements relied on by Plaintiffs in the United States. Upon information and belief, Mr. Seol also communicated frequently with PSI's agents in Korea, including without limitation Messrs. Cheon and Seo, from the United States throughout their efforts to raise funding for PSI.

83.     Defendants used instrumentalities of interstate and foreign commerce and the mails to defraud Plaintiffs. Among other things, Defendants sent the stock verifications through the mail from the United States. Mr. Cheon further communicated with Mr. Lee over the phone and through text message. And upon information and belief, Mr. Seol from the United States frequently communicated with Messrs. Cheon and Seo and others at PSI Asia to provide approval and direction for their fraudulent conduct.

84.     Plaintiffs suffered economic loss as a result of Defendants' fraud. Plaintiffs entered into transactions that involved payment 2.5 billion Won with the expectation, based on PSI's promises, that they would receive 16,935 (pre-split) shares of PSI common stock—shares that PSI says are now worth $9,210,945.00.

85.     Defendants' fraudulent conduct, including its conduct in the United States, caused this loss.

### COUNT V – CONTROL PERSON LIABILITY UNDER SECTION 20(a)
### (against Defendant Seol)

86.     Plaintiffs incorporate by reference paragraphs 1-85 herein as if set forth in their entirety.

87.     Mr. Seol is liable to Plaintiffs as a control person pursuant to Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a).

88.     PSI and PSI Investment have committed securities fraud in violation of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 promulgated thereunder and are liable to Plaintiffs for the damages caused by their securities fraud.

89.     As President and Chairman of PSI, Mr. Seol had control over PSI as it committed securities fraud under Section 10(b) and Rule 10b-5, and moreover, had control over the specific corporate policies, actions, and agents that resulted in the securities fraud. As PSI's President and Chairman, Mr. Seol controlled PSI's policies and practices and exercised control over PSI's policies and practices regarding solicitation of investment and the transfer of its shares. These policies and practices led to Plaintiffs being defrauded.

90.     As President of PSI Investment and someone with voting and dispositive control over PSI Investment, Mr. Seol had control over PSI Investment as it committed securities fraud under Section 10(b) and Rule 10b-5. He also had control over the specific corporate policies,

27

actions, and agents that resulted PSI Investment's securities fraud. Mr. Seol controlled PSI Investment's policies and practices and exercised control over PSI Investment's policies and practices regarding acquisition and transfer of PSI common stock. These policies and practices led to Plaintiffs being defrauded.

91.     Mr. Seol did not act in good faith when dealing with Plaintiffs or controlling PSI's and PSI Investment's policies and practices. To the contrary, he directly participated in the fraud against Plaintiffs, executing documents that contained material misrepresentations and causing them to be delivered to Mr. Lee. Through his conduct and by virtue of his control of PSI and PSI Investment, Mr. Seol induced PSI's and PSI Investment's fraudulent activity. Through this control and his conduct, Mr. Seol directly or indirectly induced the acts constituting PSI's and PSI Investment's securities fraud.

92.     Mr. Seol is jointly and severally liable to Plaintiffs for the damages caused by PSI's and PSI Investment's securities fraud.

## PRAYER FOR RELIEF

93.     Plaintiffs respectfully request that the Court enter judgment against Defendants, including:

a.     A declaration that Mr. Chung is the owner of 614,063 shares of PSI common stock;

b.     An order that PSI immediately register Mr. Chung as a shareholder on its shareholder register;

c.     An award of $9,210,945.00 to compensate Plaintiffs for the damages they have suffered as a result of the Defendants' fraudulent conduct; and

d.     Such other relief as the Court deems appropriate and just.

Dated May 30, 2018                         Respectfully Submitted,


                                           /s/ Christopher T. Pickens
                                           Christopher T. Pickens, VSB No 75307
                                           W. James Conlin, VSB No. 92169
                                           HOGAN LOVELLS US LLP
                                           Park Place II, Ninth Floor
                                           7930 Jones Branch Drive
                                           McLean, Virginia 22102
                                           Tel: 703-610-6100
                                           Fax: 703-610-6200
                                           E-mail: christopher.pickens@hoganlovells.com
                                           E-mail: william.conlin@hoganlovells.com

                                           *Counsel for Plaintiffs Han-Oh Chung and
                                           Dong-Wook Lee*